**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kasper Smoke Kastle LLC, | No. CV-18-00950-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Atlantic Casualty Insurance Company, | |
| Defendant. | |

Plaintiff Kasper Smoke Kastle LLC asserts claims for breach of contract, bad faith, and punitive damages against Defendant Atlantic Casualty Insurance Company. Doc. 1-1 at 5-11. Defendant moves for partial summary judgment and to strike portions of Plaintiff's response and controverting statement of facts. Docs. 76, 84. Plaintiff moves for alternative relief in regard to the motion to strike. Doc. 89. The requests for oral argument are denied because the issues are fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will grant the motion for partial summary judgment, deny the motion to strike as improper, and deny the motion for alternate relief as moot.

**I.  Background.**

The following facts are undisputed unless otherwise noted. On August 21, 2016, a fire occurred at Plaintiff's retail business, causing fire damage to the roof and smoke damage throughout much of the building. Docs. 77 ¶ 15, 81 ¶ 16. Plaintiff held a business insurance policy issued by Defendant that provided $300,000 in building coverage

and $300,000 in business personal property coverage. Doc. 77 ¶ 4. Plaintiff submitted a timely claim for the loss. *Id.* ¶ 17.

Defendant retained Mosher Adjustment Company ("Mosher") to assist with inspecting and adjusting the claim. *Id.* ¶ 19. Plaintiff first retained Resolution Fire + Flood ("Resolution") and subsequently retained the Brown O'Haver Public Adjusters ("BOH") to represent its interests. *Id.* ¶¶ 20, 27. The parties disagree on whether Plaintiff is entitled to payment for additional replacement costs for the structure, and the value of Plaintiff's business personal property.

The parties agree that the structure portion of Plaintiff's insurance claim includes a replacement cost value ("RCV") of $75,326.42 and an actual cash value ("ACV") for repairs of $64,907.76. *Id.* ¶ 51. The $10,418.67 difference between the RCV and ACV represents the added value for replacement costs. *Id.*

Defendant's policy states that Defendant will not pay replacement costs until "the lost or damaged property is actually repaired or replaced" and "[u]nless the repair or replacement is made as soon as reasonably possible after the loss or damage." *Id.* ¶ 59. The policy also states that Defendant will not pay any RCV in excess of "the amount actually spent for necessary repair or replacement." *Id.* ¶ 60. Defendant has paid Plaintiff the $64,907.76 for the ACV of the structure loss, but has not paid the additional $10,418.67 in RCV because the parties dispute whether Plaintiff has in fact completed the required repairs. Docs. 76 at 8, 80 at 4.

On the business personal property claim, Plaintiff's initial adjuster, Resolution, estimated the value of the salvageable items at $26,854.54. Doc. 77 ¶ 26. Defendant's adjuster, Mosher, estimated the value of the non-salvageable items at $15,004.81. *Id.* ¶ 24. Defendant paid Plaintiff both of these amounts, totaling $41,859.35. *Id.* ¶ 26. Plaintiff ultimately rejected Resolution's findings regarding the salvageability of various items and retained BOH. *Id.* ¶ 39. BOH developed its own valuation of the contents, arriving at a retail value of $73,528.08 (Doc. 77-4 at 43-50) and business personal property value of

$137,380.35 (*Id.* at 94-98). Defendant declined to pay more than the $41,859.35 it already had paid based on Resolution's estimate. Doc. 77 ¶¶ 26, 42.

**II. Discussion.**

    **A. Summary judgment standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1]

        **1. Breach of Contract for Structure Damage.**

Defendant argues that it is entitled to summary judgment on the structural portion of Plaintiff's claim because it has paid all of the amounts specified in Plaintiff's proofs of loss, minus the RCV. Defendant contends that Plaintiff has neither completed its repair work nor submitted the necessary invoices showing the repairs and therefore is not entitled to the RCV. Doc. 76 at 8. Plaintiff argues that it did complete the required repair work and that Defendant has violated the policy by failing to pay the RCV. Doc. 80 at 4.

RCV is available under the policy only if Plaintiff completes the required repair work. Doc. 77 ¶ 59. The policy states: "we will not pay on a replacement cost basis for

---

[1] Plaintiff's response suggests that the Court should grant summary judgment in Plaintiff's favor (Doc. 80 at 2, 8), but Plaintiff filed no motion for summary judgment. If Plaintiff had filed such a motion, it would be denied for the reasons stated in this order.

any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage." Doc. 77-1 at 110.

In support of its position that the repairs were not completed, Defendant relies on the testimony of Plaintiff's own representatives. Doc. 85 at 2. Mr. Sayegh, Plaintiff's representative in the insurance claims process, stated in his deposition on February 4, 2019 that "there's still some more repairs that are needed" and "there's other stuff, a lot of other stuff that's needed for this building to be opened[.]" Doc. 85-1 at 3-4. Plaintiff's owner, Mr. Enriquez, testified in his deposition that he believed the work was not completed. *Id.* at 7-8. Defendant also notes that Plaintiff has provided Defendant with no invoices reflecting any repair work. *Id.* at 11-12.

Plaintiff relies on Mr. Mosher's testimony to show that the repairs were completed. Plaintiff notes that Mr. Mosher inspected the property to confirm the repairs were done and subsequently sent Defendant photographs showing the repair work. Docs. 80 at 4, 81 ¶ 59. Plaintiff further notes that a certificate of completion was provided to Defendants, which states that Tri-City Maintenance, a contractor, completed some work at the property as of September 8, 2016. Doc. 81 ¶ 68.

Even when construed in Plaintiff's favor, the evidence does not show that Plaintiff has completed the required repairs. Plaintiff's assertion that Mr. Mosher "recommended to Atlantic that the RCV holdback be released to Plaintiff" is unsupported. Doc. 81 at 11. Mr. Mosher merely testified in his deposition that his usual practice was to recommend that recoverable depreciation be paid. Doc. 81-4 at 19. He did not testify that he followed his usual practice in this case. Likewise, the certificate of completion cited by Plaintiff states only that some unidentified work was completed on September 8, 2016. Doc. 81-18 at 3. It says nothing about the extent of repair work completed or whether the work relates to the RCV at issue here. Notably, Mr. Mosher went to the site in late October – more than a month after the certificate of completion was signed – and found that "clearly the property had not been restored." Doc. 81-4 at 15. Thus, the evidence clearly suggests that

1  repairs to the property have not been completed and that the RCV is not owed under the
2  insurance policy. Plaintiff has failed to produce evidence sufficient to satisfy its burden of
3  proof at trial, and on which a reasonable jury could rely in returning a verdict for Plaintiff.
4  The Court therefore will grant summary judgment on the structural loss claim.
5  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

### 2. Bad Faith.

Arizona law "implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). The covenant requires "that neither party will act to impair the right of the other to receive the benefits which flow from their . . . contractual relationship." *Id.* An insurer breaches the covenant and acts in bad faith where it "intentionally denies, fails to process or pay a claim without a reasonable basis." *Prieto v Paul Revere Life Ins.*, 354 F.3d 1005, 1009 (9th Cir. 2004) (quoting *Noble v. Nat'l Am. Life Ins.*, 624 P.2d 866, 868 (Ariz. 1981)). "Thus, if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith 'without regard to its ultimate merits.'" *Zilisch v. State Farm Mut. Auto. Ins.*, 995 P.2d 276, 280 (Ariz. 2000) (quoting *Deese v. State Farm Mut. Auto. Ins.*, 838 P.2d 1265, 1270 (Ariz. 1992)). On summary judgment, the "appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id.* at 280.

Defendant argues that it has not acted in bad faith because it paid the required structure damage claim and paid the business personal property claim based on the valuation by Plaintiff's expert. Doc. 76 at 9. Plaintiff contends that Defendant acted in bad faith by failing to pay the RCV holdback and failing to further investigate the value of the business personal property after Plaintiff rejected its own expert's "biased conclusions." Doc. 80 at 5-6.

/ / /

/ / /

### a. Structure Claim.

As explained above, Plaintiff has failed to present evidence that it completed the required structural repairs or provided invoices for such repairs. In the absence of such evidence, no jury reasonably could find that Defendant acted in bad faith by not paying the RVC for the structural loss.

### b. Business Personal Property Claim.

Defendant accepted Resolution's evaluation of the scope of Plaintiff's business personal property loss and followed its determinations about the salvageability and value of that property. Doc. 76 at 9. Plaintiff rejected Resolution's findings, retained BOH, and argues that it is entitled to payment beyond the $41,859.35 it had already received. Docs. 81-14, 77 ¶ 26. Plaintiff argues that Defendant failed to consider and investigate BOH's significantly higher valuation of the business personal property. Doc. 80 at 7.

After Plaintiff rejected the findings of its own expert, Defendant asked that expert to explain its methodology for determining the salvageability of items and their valuation. Doc. 81-16. Chris Milliken, Resolution's President, responded that Resolution followed Institute of Inspection Cleaning and Restoration ("IICR") standards and explained how Resolution determined the salvageability of the various items of business personal property. *Id.* Defendant's adjuster, Mr. Mosher, also personally inspected the business personal property at Resolution's facility to ensure it had been cleaned. Doc. 85 at 5. Only after this review of Resolution's valuation did Defendant provide Plaintiff a check for $41,854.54. Doc. 77 ¶ 26. Plaintiff has not presented sufficient evidence for a reasonable jury to find that this conduct was unreasonable.[2]

Defendant also had a reasonable basis for refusing to accept BOH's significantly higher valuation of the personal property. Defendant notes that BOH's higher valuation was due primarily to the $45 value it assigned to each of 413 pornographic DVDs, noting

---

[2] Plaintiff asserts that it was inexperienced in dealing with fire losses and hired Resolution at Defendant's suggestion. But Plaintiff does not allege that Plaintiff was unable to conduct reasonable due diligence and hire a competent and certified professional to analyze its fire losses. Plaintiff also implies that Resolution was biased and incompetent, but presents no evidence that Defendant knew of Resolution's alleged defects or recommended Resolution in order to obtain a more favorable result.

- 6 -

that Defendant's expert assigned a retail value to these DVDs of $9 each. Plaintiff does not dispute these facts. *See* Docs. 77 ¶¶ 27-29, 81 ¶¶ 27-29. Further, Plaintiff's owner testified that he arrived at the $45 value by marking up the DVDs to a price three times the value of what he paid for them – which would be the actual cash value due under the insurance policy. *See* Doc, 77-1 at 129. Plaintiff does not address this point – or say anything about the DVD valuation issue – in its response. Additionally, before arriving at its higher valuation, BOH conducted no independent work to test whether its predecessor, Resolution, had produced an accurate valuation of the personal property, but instead merely used the property values provided by Mr. Sayegh. Docs. 77 ¶¶ 30, 32, 81 ¶¶ 30, 32.

Nor can the Court accept Plaintiff's contention that Defendant acted in bad faith by refusing to engage in a joint inspection of the personal property. Plaintiff requested a joint appraisal of the property under the insurance policy and Defendant agreed, but Plaintiff subsequently cancelled the appraisal. Doc. 77 ¶¶ 43, 46. After withdrawing its appraisal demand, Plaintiff engaged in no further communications with Defendant regarding the business personal property claim. Doc. 76 at 7.

In sum, Plaintiff has failed to present evidence from which a reasonable jury could find that Defendant acted in bad faith on the business personal property claim. Defendant accepted and paid the amounts determined by Plaintiff's expert, Resolution, after taking steps to determine the basis for Resolution's valuation. Defendant was not obligated to retain an expert to challenge Resolution's work, as Plaintiff suggests, nor to accept the alternative valuation of BOH based on values provided by Plaintiff. Defendant was willing to engage in an appraisal of the property, but Plaintiff cancelled the appraisal. While the parties may now disagree on the value of the lost or damaged business personal property, Plaintiff has not presented evidence that Defendant engaged in "consciously unreasonable conduct." *Milhone v. Allstate Ins. Co.*, 289 F. Supp. 2d 1089, 1102-03 (D. Ariz. 2003). The Court will grant summary judgment on the bad faith issue related to the business personal property claim.

/ / /

### 3. Punitive Damages.

In response to Defendant's motion, Plaintiff has withdrawn its request for punitive damages. *See* Doc. 80 at 8 ("Plaintiff hereby withdraws its request for punitive damages"). The Court will grant summary judgment on punitive damages.

### B. Motions to Strike and for Alternative Relief.

Defendant contends that Plaintiff failed to disclose that it possessed any of the tangible business personal property at issue in this case, that the business personal property would itself be offered as evidence of damage, and that Plaintiff intended to have an expert opine on the scope of the alleged smoke damage. Doc. 84 at 1. Defendant moves to strike references to this undisclosed evidence in Plaintiff's response and controverting statement of facts. *Id.* at 1-2; *see* Docs. 80, 81.

Local Rule 7.2 states that any "objection to (and any argument regarding) the admissibility of evidence offered in support of or opposition to a motion must be presented in the objecting party's responsive or reply memorandum and not in a separate motion to strike or other separate filing." LRCiv 7.2(m)(2). Because Defendant's motion to strike violates Local Rule 7.2(m), the Court will deny the motion. Given this ruling, the Court will deny as moot the motion for alternative relief. *See* Doc. 89.[3]

**IT IS ORDERED:**

1. Defendant's motion for partial summary judgment (Doc. 76) is **granted**. Judgment is entered in favor of Defendant on the breach of contract claim (Count 1) as it relates to the structure portion of Plaintiff's claim, and in full as to the bad faith claim (Count 2) and the request for punitive damages.

2. Defendant's motion to strike (Doc. 84) is **denied**.

---

[3] Denial of the motion to strike does not affect the Court's ruling on Defendant's motion for summary judgment on the business personal property bad faith claim. As noted above, Defendant accepted the personal property damage assessment prepared by Plaintiff's expert, Resolution. Plaintiff has not presented sufficient evidence for a reasonable jury to conclude that Defendant acted unreasonably when it failed to reject that valuation and accept the alternative valuation by BOH. Nor has Plaintiff presented sufficient evidence that Defendant acted unreasonably by failing to investigate whether the personal property had been cleaned properly, particularly when that basis for claiming a higher loss amount was not clearly disclosed by Plaintiff until the late in this litigation.

3. Plaintiff's motion for consideration of alternative relief (Doc. 89) is **denied** as moot.

4. The Court will hold a telephone conference to set a trial date and a final pretrial conference on **October 3, 2019 at 4:00 p.m.** Counsel for Plaintiff shall initiate a conference call to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiff shall provide the dial-in information to counsel for all parties and the Court no later than 12:00 noon on **October 2, 2019.**

Dated this 23rd day of September, 2019.

*David G. Campbell*

David G. Campbell
Senior United States District Judge