**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kasper Smoke Kastle LLC, | No. CV-18-00950-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Atlantic Casualty Insurance Company, | |
| Defendant. | |

Pending before the Court are dueling motions for attorneys' fees and costs under Arizona Revised Statutes ("A.R.S.") §§ 12-341 and 12-341.01. (Docs. 146, 152). Plaintiff Kasper Smoke Kastle LLC ("Plaintiff") has responded to Defendant Atlantic Casualty Insurance Company's ("Defendant") motion, (Doc. 151), but has not replied in support of its own motion. Defendant has both responded, (Doc. 160), and replied, (Doc. 161). The Court now rules on the motions.

**I.  BACKGROUND**

In 2016, a fire broke out in Plaintiff's smoke shop and convenience store, damaging the structure and personal property used in connection with the business ("BPP") housed within. (Doc. 1-1 at 6). Plaintiff held a policy with Defendant and submitted a claim for the fire damage. (*Id.*). Defendant paid some amounts under the policy, but Plaintiff believed that Defendant had undervalued the BPP and that it was entitled to additional replacement costs for the structure. (Doc. 92 at 2). Thus, Plaintiff filed a lawsuit in Maricopa County Superior Court raising two counts: (1) "Breach of Contract; Breach of Implied Covenant

of Good Faith and Fair Dealing" and (2) "Tortious Bad Faith Claims Handling." (Doc. 1-1 at 7–8). Soon after, Defendant removed the case to federal court. (Doc. 1).

The lawsuit was relatively uneventful from that point on until Defendant filed a motion for partial summary judgment. (Doc. 76). That motion sought summary judgment on: (1) Plaintiff's "action for tortious bad faith and its claim for punitive damages" and (2) the breach of contract claim, but only as it related to the "payment of repairs to the structure at issue." (*Id.* at 1). As explained in the summary judgment order, the amount in dispute on the structure portion of Plaintiff's insurance claim was $10,418.67, which represented the difference between the replacement cost value and actual cash value of the structure. (Doc. 92 at 2). As for the BPP, the parties' dispute centered on how to properly value the contents. (*Id.*). Plaintiff's initial adjuster valued the salvageable items at $26,854.54 and Defendant's adjuster valued the non-salvageable items at $15,004.81. (*Id.*). Defendant paid Plaintiff both of these amounts. (*Id.*). Plaintiff rejected its first adjustor's findings on salvageability and hired a new adjustor who developed its own valuation of the contents, arriving at a retail value of $73,528.08 and BPP value of $137,380.35. (*Id.* at 2–3).

The Court granted Defendant's partial motion for summary judgment in full. (Doc. 92 at 8). The order explained that Plaintiff had put forward no evidence that it had completed the repairs to the structure and the policy required such repairs before covering the structure's replacement cost value. (*Id.* at 3–4). Because Defendant had paid all amounts otherwise due for the structure damage, the Court granted summary judgment on the structural loss portion of Plaintiff's breach of contract claim. (*Id.* at 4). Turning to the bad faith claim, the Court concluded that no reasonable jury could find that Defendant acted in bad faith because it had: (1) paid all that was due under the policy for the structural loss and (2) paid the amount calculated by Plaintiff's first adjustor and did not need to accept Plaintiff's second adjustor's alternate figure, which was based on values Plaintiff provided. (*Id.* at 6–7). Thus, the Court entered summary judgment on the entirety of Plaintiff's bad faith claim and its request for punitive damages. (*Id.* at 8).[1]

---

[1] There is some dispute in the briefs about how to view the summary judgment order. Defendant argues that the Court entered judgment on at least three out of four, or arguably

The case proceeded to trial, before which the Court denied without prejudice three of Defendant's motions in limine that, collectively, sought to exclude a vast amount of the evidence that Plaintiff planned on introducing. (Doc. 114 at 1). After a four-day trial, the jury found in Plaintiff's favor and awarded $94,013.59 in damages, (Doc. 127 at 2), and judgment was entered accordingly, (Doc. 133). The pending motions followed.

## II. DISCUSSION

The Court has discretion to award reasonable attorneys' fees to the successful party in a contested action arising out of a contract. A.R.S. §12-341.01(A). Awarding fees in such cases involves a three-step process. *See Lexington Ins. Co. v. Scott Homes Multifamily Inc.*, No. CV-12-02119-PHX-JAT, 2016 WL 5118316, at *3–5 (D. Ariz. Sept. 21, 2016). The Court first exercises substantial discretion to determine who is the "successful party" in the action. *Hall v. Read Dev., Inc.*, 274 P.3d 1211, 1213 ¶ 7 (Ariz. Ct. App. 2012).[2] In a case like this one with multiple claims, courts generally look to the "totality of the litigation" to make that determination. *Berry v. 352 E. Va., L.L.C.*, 261 P.3d 784, 788–89 ¶ 22 (Ariz. Ct. App. 2011). Next, the Court exercises its discretion again to determine whether an award of fees to the successful party is appropriate under the factors identified in *Associated Indemnity Corporation v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). *See Med. Protective Co. v. Pang*, 740 F.3d 1279, 1284 (9th Cir. 2013). If it concludes an award to the successful party is appropriate, the Court must finally decide whether that party's request is reasonable. *Maguire v. Coltrell*, No. CV-14-1255-PHX-DGC, 2015 WL

---

four out of five, claims in the summary judgment order. (*See* Doc. 161 at 1 n.1). Plaintiff analyzes the order more along the lines of the complaint, which had only two counts. (*See* Doc. 151 at 7–8). The Court believes these arguments elevate form over function. Instead of engaging in a claim-counting exercise, the Court chooses to instead premise its analysis on the impact of the order on the litigation.

[2] As *Hall* explains, when a written settlement offer is rejected, the second sentence of A.R.S. § 12-341.01(A) narrows that discretion somewhat by requiring courts to engage in the "settlement comparison test" by comparing the rejected offer to the "judgment finally obtained," including reasonable attorneys' fees incurred up to the date of the offer. 274 P.3d at 1213–14, 1217 ¶¶ 9, 20. If settling would have been more favorable to the offeree, the statute deems the offeror the successful party from the date of the offer. *Id.* at 1213 ¶ 9. The briefs mention written settlement offers, but neither party seeks application of the settlement comparison test and, moreover, it is clear that the rejected settlements were less favorable than any "judgment finally obtained."

3999188, at *3 (D. Ariz. July 1, 2015) (citing *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 931–32 (Ariz. Ct. App. 1983)).

Thus, the essential predicate for an award of attorneys' fees under A.R.S. § 12-341.01(A) is the existence of a successful party within the meaning of that statute. Defendant, however, makes (at best) only a cursory argument that it has prevailed, focusing nearly all of its efforts on whether an award is appropriate under the *Warner* factors. (Doc. 146 at 3–7). Those factors do not address which party has succeeded and are applied only after that determination has been made. *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 874 P.2d 982, 987 (Ariz. Ct. App. 1994). Defendant's argument addressing whether it has succeeded extends no further than its unadorned assertion that, because the Court granted summary judgment on bad faith, it is eligible for fees because it is in the same position as the insurer that received fees in *Schwartz v. Farmers Insurance Company of Arizona*, 800 P.2d 20 (Ariz. Ct. App. 1990). (Docs. 146 at 3; 160 at 6). Any surface-level similarity between the two cases evaporates on closer examination. In *Schwartz*, the contract claim was for a mere $2,000 whereas the bad faith claim requested punitive damages in an amount that would "punish" a company worth $266,437,727 and was described as the "major issue to be decided in the litigation." *Id.* at 25. The case at bar is readily distinguishable given that Plaintiff's breach of contract claim was for a far greater amount. Moreover, the bad faith claim was seemingly a relatively minor issue at the summary-judgment stage. Plaintiff's only evidence of bad faith was Defendant's purported failure to inform Plaintiff why it had not paid additional replacement costs for the structural damage and its refusal to jointly inspect the BPP. (Doc. 92 at 6–7). In the end, Defendant provides nothing else that would allow the Court to conclude that it was successful, and the Court simply will not act as Defendant's lawyer and invent arguments on its behalf.

Plaintiff, for its part, argues that it is the successful party under the totality-of-the-litigation test because it obtained a jury verdict and, even though summary judgment was entered on its bad faith claim, its claims were "factually interrelated" and "aimed at achieving the same relief: recovery of the 'contract' damages." (Doc. 152 at 3). It points

out that a party can still be successful under A.R.S. § 12-341.01(A) despite failing to obtain all the relief sought. (*Id.* at 4). None of these points, however, are dispositive.

While a monetary award is "an important item to consider" in the successful-party analysis, *Ocean W. Contractors, Inc. v. Halec Constr. Co.*, 600 P.2d 1102, 1105 (Ariz. 1979), the Court cannot look past the fact that, in addition to losing its bad faith claim at summary judgment, Plaintiff obtained much less than half the relief that it sought at trial, (*see* Doc. 146 at 2). Nor can the Court accept Plaintiff's assertion that its bad faith claim simply sought what it was owed under the policy. Although some aspects of the damages available to Plaintiff for both of its claims might have overlapped, it is clear that Plaintiff would have been entitled to prove damages beyond what was owed under the policy had its bad faith claim survived summary judgment. *Rawlings v. Apodaca*, 726 P.2d 565, 577 (Ariz. 1986) (explaining that, when tort damages are available in an insurance bad faith claim, the insured can recover for "all the losses caused by defendant's conduct, including damages for pain, humiliation and inconvenience, . . . pecuniary losses," and punitive damages in an appropriate case). How Plaintiff would have presented its theory of tort damages, or any entitlement to punitive damages, is a guessing game that the Court will not indulge in.[3] The Court agrees with Plaintiff that a complete victory has never been the *sine qua non* of the successful-party analysis, *Lee v. ING Inv. Mgmt., LLC*, 377 P.3d 355, 358 ¶ 10 (Ariz. Ct. App. 2016), but is nevertheless unable to conclude Plaintiff is the successful party given the very limited amount of success that it experienced.

Based on the verdict awarding Plaintiff a portion of the money it sought, and the summary judgment order, Arizona law supports a finding that neither party is successful within the meaning of A.R.S. § 12-341.01(A). *See, e.g.*, *Med. Protective Co.*, 740 F.3d at 1283 n.3 ("If there is 'no clear successful party,' such as when the jury returns a partial verdict, it may be proper for the court to find that there was no successful party." (first quoting *Bank One, Ariz. v. Rouse*, 887 P.2d 566, 571 (Ariz. Ct. App. 1994); and then citing

---

[3] Defendant asserts that Plaintiff had taken the position that a $400,000 settlement was warranted in light of the bad faith claim but the record is devoid of any evidence indicating what the source of Plaintiff's bad faith damages would have been other than the contract. (Doc. 146 at 10).

- 5 -

*Kaman Aerospace v. Ariz. Bd. of Regents*, 171 P.3d 599, 609 (Ariz. Ct. App. 2007))); *Conlon Grp. of Ariz. v. CNL Biltmore Real Estate*, No. CV-08-965-PHX-FJM, 2010 WL 742620, at *1 (D. Ariz. Feb. 24, 2010); *Liss v. Exel Transp. Servs. Inc.*, No. CV-04-2001-PHX-SMM, 2009 WL 10708576, at *5 (D. Ariz. July 2, 2009); *First Ascent Ventures Inc. v. DLC Dermacare LLC*, No. CV06-1794-PHX-JAT, 2007 WL 1876376, at *2 (D. Ariz. June 27, 2007). Accordingly, the Court will deny both parties' motions for attorneys' fees.[4]

### III. CONCLUSION

Based on the foregoing,

IT IS ORDERED that Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 152) and Defendant's Motion for Attorneys' Fees and Costs (Doc. 146) are DENIED.

Dated this 3rd day of April, 2020.

James A. Teilborg
Senior United States District Judge

---

[4] The foregoing analysis applies equally to both parties' request for costs, which also turns on the existence of a successful party. A.R.S. § 12-341 ("The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law."); *Watson Constr. Co. v. Amfac Mortg. Corp.*, 606 P.2d 421, 435–36 (Ariz. Ct. App. 1979).